IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UPAID SYSTEMS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> ALLIANCE LAUNDRY SYSTEMS LLC and SPEED QUEEN LAUNDRY LLC, <br><br> Defendants. | C.A. No. 19-346 (MN) |

**MEMORANDUM ORDER**

At Wilmington this 6th day of January 2020:

As announced at the hearing on December 20, 2019, IT IS HEREBY ORDERED that Defendants Alliance Laundry Systems LLC and Speed Queen Laundry LLC's ("Defendants") Motion to Dismiss for Failure to State a Claim (D.I. 9) is DENIED.

Defendants' motion to dismiss was fully briefed as of September 5, 2019 (*see* D.I. 9, 10, 18, 20, 23), and the Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions to dismiss (*see* D.I. 25, 26; *see also* D.I. 24). The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument (*see* D.I. 28) and applied the following legal standard in reaching its decision:

**I. LEGAL STANDARDS**

A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229

(3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

    B.    <u>Patent-Eligible Subject Matter</u>

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether

a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1.  Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not

enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

### 2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## II. THE COURT'S RULING

The ruling to deny Defendants' motion to dismiss (D.I. 9) pursuant to Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . Thank you for the arguments that we had here today. I am prepared to rule on the pending motions. I will not be issuing written opinions, but I will issue an order stating my rulings. I want to emphasize before I get to the rulings that while I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was full briefing on each of the pending motions, there were additional submissions regarding what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.
>
> Now as to my rulings. I am not going to read into the record my understanding of Section 101 law. I have a legal standard that I have included in earlier opinions, including in *Kroy IP Holdings v. Groupon*, C.A. No. 17-1405-MN. I incorporate that law and adopt it into my ruling today. I will also set it out in the order that I issue.
>
> First, as to *Upaid*, C.A. No. 18-1518-MN. There are two patents at issue – U.S. Patent Nos. 8,976,947 and 10,127,555. They share the same specification. The patents generally relate to methods for providing pre-authorized communication services and transactions using existing network technology.
>
> Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent ineligible subject matter. After reviewing the entire record, hearing argument and applying the law as I understand it, I am going to deny the motion.
>
> > [Claim 1 of the '947 Patent recites:
> >
> > 1. At least one computer readable medium encoded with processing instructions performed by at least one computer to perform a method of providing from a platform pre-authorized communication services and transactions using a plurality of external networks of different types and which are external to the platform, the method comprising:
> >
> > > accepting and processing a request from a user to provide at least one of a communication

service, a transaction or user account information via one of the plurality of external networks;

verifying that the user is authorized to receive the at least one of the communication service, the transaction, or the user account information, and that an account associated with the user has a sufficient amount currently available for payment of the at least one of the communication service or the transaction; and

charging, in a real-time transaction, an authorized account associated with the user as the platform controls an element of a corresponding one of the plurality of external networks to provide at least one of the communication service or the transaction as provided by any one of a plurality of different service and transaction providers.]

Defendants use claim 1 [of the '947 Patent] as representative of all "asserted" claims in both patents. It is unclear, however, what claims, if any, other than claim 1 are asserted. And Defendants did not address each claim individually to establish representativeness in their papers.[1]

Plaintiff challenged the representativeness of claim 1, asserting it is not representative of all claims in the '947 Patent or the claims in the '555 Patent. In making that argument, Plaintiff focused on the claim type,[2] however, and didn't really identify any meaningful differences in the claims.

---

[1] At the hearing, Defendants asserted that there are three groups of representative claims: (1) verification and user optimization claims (1, 19, 20 and 25 of the '947 Patent and 1 and 19 of the '555 Patent); (2) verification and authorization as well as rating engine claims (11, 21, 22, 23, 24, and 31 of the '947 Patent and claim 11 of the '555 Patent); and (3) verification and authorization information and sending messages claims (38, 44, 47, 48 and 50 of the '947 Patent and claim 25 of the '555 Patent). Plaintiff agreed at the hearing that those groups are representative. (*See* D.I. 28 at 17:10-18:4).

[2] Plaintiff focused on whether the claim was a device vs. system vs. platform claim. (*See* D.I. 18 at 7-8). The Supreme Court, however, has made clear that claim type alone is not sufficient to differentiate claims under § 101. *See Alice*, 573 U.S. at 226 ("Put another way, the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea.").

In my review of the claims, I do not really see anything in the claims other than claim 1 that changes my analysis but, in any event, as I am about to state, I find Defendants have not persuaded me that claim 1 is directed to an abstract idea. And Defendants agreed here today that all claims rise or fall with claim 1 regardless of whether I find them directed to eligible or ineligible subject matter.

As to step 1 of *Alice*, Defendants argue that the asserted claims are directed to the abstract idea of "processing a purchase of communication services" or "processing a request for financing a purchase of communication services or a transaction."[3]

Plaintiff, on the other hand, argues that the claims are directed to "an improvement in computer functionality" or "an improvement in existing technology (circa 1998)" – i.e., a platform that allows for communication like pre-authorized advanced services between different carrier networks.[4]

I have struggled here with whether the claims are directed to an abstract idea or to improvements in the capability or functioning of computers or technology as was the case in *Enfish*, *Core Wireless*, *Date Engines* and other similar cases.

I take Defendants' point that the claims focus on providing a communication service in exchange for a financial transaction, and that that transaction is claimed using largely functional limitations. And I understand that such functional limitations can suggest that a claim is directed to an abstract idea when those limitations show that the focus of the claim is merely a result rather than how to achieve that result.[5]

That being said, Plaintiff notes that the prior art communication systems suffered from the inability to provide different services to subscribers because of limitations in the hardware and software of the different networks used for communications.[6] And there is support for this in the specification

---

[3] (*See* D.I. 10 at 1,6).

[4] (*See* D.I. 18 at 8-9).

[5] *See e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO*, 837 F.3d at 1314; *Affinity Labs*, 838 F.3d at 1258.

[6] (*See* D.I. 18 at 8-10).

7

– for example, at column 1, line 39 to column 2, line 18 of the '947 Patent.[7]

Moreover, the recitation of a "platform" or "enhanced services platform" in the claims [(*e.g.*, claim 20 of the '947 Patent)] along with that platform providing services over external networks "of different types" and controlling an element of an external network to provide the communication service seems to suggest that the claims are directed to a way of improving some of the shortcomings of the prior art described in the specification. This specific description, which appears in the specification and, more importantly, in the claims, seems to overcome Defendants' argument that the focus of the claims is just the idea of processing a request for purchasing a communication service or transaction.

Thus, when the claims are considered as a whole and based on the current record, I cannot agree with Defendants that the claims are directed to an abstract idea instead of an improvement in the functioning of networks. It may be that further proceedings and a more developed record lends clarity to this issue, but Defendants have failed to show at this stage that the claims are directed to an abstract idea. I will thus follow the approach of Judge Bryson in a similar situation while he was sitting by designation in *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, in the Eastern District of Texas[8] and deny the motion to dismiss.

Because Defendants have not persuaded me on this record that the claims are directed to an abstract idea rather than being directed to an improvement in technology, I need not reach step two of the *Alice*/*Mayo* analysis.[9] And I will deny the motion with leave to renew it at summary judgment to the extent that there are no factual issues precluding that.

_____
The Honorable Maryellen Noreika
United States District Judge

---

[7] This portion of the specification describes how subscribers could not use advanced communication services like call forwarding because those services depended on the telephone carrier equipment.

[8] *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, No. 2:17-660-WCB-RSP, 2018 WL 5634231, at *5 (E.D. Tex. Oct. 31, 2018).

[9] *See Core Wireless*, 880 F.3d at 1363.